Good morning, Your Honor. Phil Kilduff appearing for the appellant. Your Honor, I would like to put on the record before I argue, this is a rather extraordinary situation, how this came to my being here today. I would like to make a motion for continuance. I work for a firm called Attorneys on Call, and we normally do appearances for other attorneys on non-substantial matters when they are out of town or have conflicts. Mr. Danger's office called us and asked if we could take this appeal. We didn't realize the complexities of this and the seriousness in relation to Mr. McPeak's situation. This is a very serious, complex case. And I only got the brief and the materials from Mr. Danger on Tuesday of this week. I immediately … Now, what's Mr. Danger's problem? He's the attorney of record, is he not? He's the attorney of record. Why isn't he here? His office told me that he was out of town, Your Honor, and I asked could we get in touch with him. They said they couldn't reach him. Well, I mean, just by the very name of your outfit, attorneys on call, it seems to me you find yourself in this situation every day, right? I mean, that's the kind of work you do. No, it's not, Your Honor. What does an attorney on call do? I mean, you know, the practitioner says, well, listen, I got an appearance tomorrow morning in the Superior Court at 10. I just can't be there. I want you to take it. And you say yes or no, and you make the amount of inquiry you necessary, right, before you say yes or no. And in this case, you said yes. We said yes. Well, so you took the engagement. Well, that's true, but we didn't realize … And it's the kind of work you do every day. No, not this kind of work. Well, when I say this is the kind of work you do, taking cases for attorneys who can't make appearances. That's correct. Now, if I'm not mistaken, Mr. Dangler was notified about eight weeks ago, perhaps as sometime in that time frame, that there would be oral argument in his case this morning at this time. Is there any explanation that you can offer for … I have none, Your Honor. I called immediately. We tried to find other counsel we felt could confidently review this. I've been working since … When were you first contacted? Tuesday. This week. I first got the materials Tuesday of this week. That's three days ago. Yes. But they contacted lawyers on call two weeks ago and said they would provide the materials. And as soon as I got the materials, I realized that this was not a thing that … Well, did you try to call Mr. Dangler's office in as soon as you found that out? Pardon? I said, did you try to get a hold of Mr. Dangler's … Immediately, Your Honor. And did you reach him? No. I got his paralegal. She told me now. She said, well, I said, this is a very complex matter and this is very short notice to do this. She said, well, you just you base your appeal on the arguments in the brief. And she's a young lady. I don't I think she misunderstood what we did and thought we could. It would be like saying on the last day of trial, I can't come in and hire us to come in to make your summation. It's just not something. Now, if you knew about it now, you've got the materials on Tuesday and you had some notion. What? As soon as you looked at the materials that. Yes. Too complex. Did you let it. Did you let the clerk know that this was. I did not leave the court. No, no, Your Honor. But I did try to find other counsel. I roundtable this with several people in town. I've been a member of the bar since 1964. I was admitted to this court by Frank Schmidt in 64. But I've never appeared before you in terms of three strikes. When I did criminal law, there wasn't three strikes. But I saw this this in the interest of Mr. McPeak. I think he deserves to have the person that was appointed. We appreciate your being here, Mr. Kilduff. I gather what's on the table at the moment is a motion for continuance. The panel will have to entertain that. We won't make that decision in open court, but we will entertain that and advise you. Anything to offer at all on the merits. Well, I reviewed the papers submitted to me, the brief and the attorney general's brief. And I would like to say, I believe there's a there was a search and seizure that was not suppressed. It should have been suppressed in the trial court. And I think it fits into the two prong attack under. What's it? Strickland versus Washington, which I just read last night. And I think because that trial counsel did not suppress this, that that was sufficient grounds to deny adequate counsel for the the appellate. Simply because one of the things they recovered was the knife. Now, the knife is a central part of two of the charges armed robbery with a deadly weapon and assault with a deadly weapon. Had the knife been excluded from evidence, they would have had to rely on the victim's testimony. And her testimony was subject to impeachment. The defendants had three witnesses who testified that they were the victim and her husband were dealing drugs. She denied it. These these witnesses said they had dealt drugs with her. Then there's a. So her testimony was primarily to kill this. You know, yes. If you read the Strickland that you say you have, there are two parts to the Strickland. I understand. And you're addressing the first part of whether or not you think this attorney should have said something else. But the second part, I think it's just as important. And namely, the president. Did he suffer prejudice? He mean the petitioner from these, these failures. And that, of course, depends on what the record otherwise shows. Well, you think you can make a case that there was prejudice? I do. I think that that's what I'm trying to make value with exclude that knife. And you don't have a case for armed robbery with assault or assault with a deadly weapon. You do. The victim's testimony was credible. And she testified. And even if the knife hadn't been admitted, there was some extrinsic corroboration of much of what she said, because Detective Grandwood recovered these rings from your client's mother. So if there's admit if there was evidence that was admitted and it bolstered the victim's testimony, the victim easily was entitled to claim without there necessarily being physical evidence to corroborated that a knife had been wielded. How are we supposed to find that your client was prejudiced within the meaning of Stan Strickland? Well, I think the her testimony was incredible. I mean, she was subject to impeachment. Three witnesses testified that. And if you if you look at that in conjunction with not having the knife, then I don't think they had a case to prove those two crimes. Well, didn't the trial lawyer for your client challenge her credibility, not only on cross-examination, but in closing argument? Her meaning the victim. I don't know. I honestly can't say I know that if I have that information. Kelsey, you have about a minute left. Why don't you reserve that? We'll hear from the government. And if there's any follow up, we can hear from you. May it please the court. My name is Catherine Chapman. I'm appearing on behalf of the appellee warden today. Go ahead. Go ahead. Yes. Can you tell us anything about Mr. Dangler and what's going on here? I'm sorry, I cannot. This is the first I have heard that he is unavailable today. And I have nothing to add except that I'm prepared to proceed. You want to say anything about the merits? I would just briefly say that, in fact, the court's point is well taken, that there is indeed strong evidence of appellant's guilt. In particular, not only the very coherent and complete testimony of the victim, but the fact that the property that she alleged to be stolen from her was recovered from appellant's mother, with whom he lived. Now, is there a parole search issue in this case? Not really. There would have been a parole search issue at that time. I believe that I said in my brief that had counsel moved to suppress this evidence, that motion very likely would have been well taken under the law in California at the time. I do strongly believe, after looking carefully at some of the pretrial proceedings, that counsel knew this and had good and sufficient reason for not filing that motion, in that he used the evidence seized to advance. As a strategic or tactical decision? Clearly. Is that what you're saying? I think clearly he did, because his total attack on the case, given that there was a witness who saw appellant arrive at the apartment building, had to be to attack the credibility of the victim's testimony and to explain why he would have been there that day. He used some of the evidence recovered at his apartment to say, Look, I have this marijuana in my apartment. I got it from her. I was there because they are my marijuana connection. Ms. Chapman, is there anything in the record that you're aware of that indicates whether at the trial itself, in closing argument the prosecutor told the jury, Look, you don't have to believe Mrs. Smedley to find there was an assault with a deadly weapon here. You can just look at the fact that the weapon is in evidence itself. The knife is present. It was found in his apartment. If you have doubts about Mrs. Smedley, don't let those doubts prevent you from seeing the truth. The truth is in the knife. Was there that kind of misplaced, not misplaced, but heavily placed emphasis on the knife in the record? I do not remember any emphasis on the knife. I do remember a heavy emphasis on the rings, which, of course, are more distinctive than a knife would be. The rings are not the issue on the failure to move the suppress. I agree. But I guess what I'm saying is he found the rings to be more important than the knife. And I don't recall a heavy emphasis on the knife. I do recall also that he essentially conceded that there was a little problem with her credibility as to her prior relationship with Appellant, that in fact there may have been, well, not as to her relationship with Appellant, but as to whether or not there was drug dealing in the apartment, that although she denied it, evidently he had to concede that there was drug dealing at the apartment. But that was all before the jury, right? The jury knew about that. Correct. Yeah. Correct. You know, in short, I feel that in light of a readily apparent strategic reason for not suppressing the evidence and the fact that the rings connected him with the robbery in what I feel is a much stronger way than the knife and the fanny pack, I think that Appellant simply cannot carry his burden under Strickland. Appellant has not addressed my other somewhat more complex arguments as to prejudice. Well, they're covered in the brief. If the court is satisfied with the coverage in the brief, I will submit that. Very good. Thank you, Counsel. Are there any questions at all? No questions. Thank you. Thank you, Counsel. Mr. Koldoff, anything further? I did contact her answering service yesterday and informed her that I would be appearing and left a message explaining that to her. So that that did occur. There's one other thing, too. The second issue of the plaintiff's trial counsel putting money into the witness's account and the district attorney commenting on that. You take that in combination with all the other evidence that we could point towards the plaintiff as the victim is not being a reliable witness. This was very damning to Mr. McPete. And the district attorney knew that. He used that in his final argument. And it may have been a minor amount of money. But under the circumstances, when you're dealing with questionable witnesses, all these people were involved in drug dealings. This could be a fatal thing. And I think that should be considered in conjunction with the unlawful search. Thank you, Counsel. Your time has expired. Thank you. I just want to make a comment concerning the circumstances under which you took this case and how recently you received the record. I think you've done a commendable job. I agree. I agree as well. OK.
judges: O'scannlain, Tashima, Matz